IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHANIE ROSALIA GRIMES,                )
                                          )
        Plaintiff,                        )
                                          )
    -vs-                                  )    Civil Action No. 15-1557
                                          )
NANCY A. BERRYHILL,[1]                    )
ACTING COMMISSIONER OF SOCIAL             )
SECURITY,                                 )
                                          )
        Defendant.                        )

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Plaintiff Stephanie Rosalia Grimes ("Grimes") brings this action seeking judicial review of the ALJ's decision denying a claim for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Grimes applied for benefits on February 2, 2011 alleging a disability beginning on April 1, 2010. (R. 14) She appeared and testified at a January 31, 2012 hearing as did a vocational expert. (R. 14) The ALJ denied Grimes' claim, finding her capable of medium work with certain restrictions. (R. 19) Grimes has appealed, challenging the ALJ's decision in several respects. Pending are Cross Motions for Summary Judgment. Docket no. 13 and Docket no. 15. After careful consideration, I find Grimes' assertions to be persuasive. Consequently, the ALJ's decision is reversed and this case is remanded for additional consideration.

---

[1] Nancy A. Berryhill because acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

## Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

2. <u>The ALJ's Evaluation of Migraines</u>

Grimes urges that the ALJ's evaluation of her migraines was erroneous. The Commissioner counters that the ALJ's finding with respect to migraines is supported by substantial evidence of record. After careful review, I agree with Grimes and find that the ALJ failed to properly assess the medical evidence as it relates to migraines and failed to incorporate limitations into the RFC relating to migraines.

As a colleague in this District recently observed:

> an ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir*, 734 F.2d at 961. Courts generally afford significant deference to an ALJ's credibility determination. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). However, "[a]n ALJ must be particularly diligent in making credibility determinations with regard to migraines, because laboratory tests cannot prove their existence." *Thomas v. Colvin*, 2015 WL 4067147, at * 5 (W.D. Pa. July 2, 2015) (quoting *Parsley v. Astrue*, 2009 WL 1940365, at * 3(W.D. Pa. July 2, 2009)). For this reason, courts have consistently held that when presented with documented allegations of symptoms consistent with the claimed disorder, it is not appropriate for an ALJ to reject a claimant's testimony solely based on an absence of objective evidence. *Id.* at * 5; *Abbruzzese v. Astrue*, 2010 WL 5140615, at * 7 (W.D. Pa. Dec. 9, 2010) Courts look at a number of factors in determining whether a claimant's complaints of migraines are credible, including: whether the claimant has been diagnosed with migraines; whether the claimant has received treatment and medication; the length of the history of complaints and treatment relating to migraines; the alleged severity and frequency; the symptoms the claimant alleges the migraines cause; and whether the record contains any statements from doctors questioning the alleged frequency or severity. *Thomas*, 2015 WL 4067146, at * 5-7 (collecting decisions).

*Kulbacki v. Colvin*, Civ. No. 15-297, 2016 WL 2609984 at * 6 (W.D. Pa. May 6, 2016). Here, a review of the record reveals that the ALJ ran afoul of this admonition. In fact, the ALJ repeatedly made reference to the lack of objective evidence supporting Grimes' claims. For instance, he states that "the claimant's lack of candor calls into question her overall veracity as a witness and renders her laundry list of asserted symptoms suspect,

3

with very few symptoms having any clinical confirmation despite the claimant's assertions that they are debilitating." (R. 641) (emphasis added). With respect to migraines in particular, the ALJ commented that "despite the lack of clinical confirmation, Dr. Rice wrote a letter on May 8, 2015, indicating that she had seen the claimant three years earlier for chronic migraines and bipolar / depression." (R. 644) (emphasis added). He later added that "[c]laimant's allegations of pain and related subjective complaints are credited only when objective medical signs and findings show the existence of a medical impairment which could reasonably be expected to produce such complaints." (R. 645) (emphasis added). The ALJ summarizes his findings by stating that "while it is reasonable to expect that claimant has experienced intermittent episodes of discomfort, particularly with significant exertion, the record fails to delineate objective evidence establishing that the claimant is unable to perform sustained work activity due to mental or physical impairment or a combination thereof." (R. 649) (emphasis added). He later states that "[t]here is … simply no convincing evidence which corroborates or substantiates the claimant's asserted inability to engage in any substantial gainful activity on a regular and continuing basis since the residual functional capacity outlined above provides accommodation for all medically documented impairments, associated symptoms, and concomitant limitations reasonably supported by this record." (R. 649) (emphasis added). *See also* (R. 647) (stating that "[t]he undersigned notes that no treating source has assessed the claimant with respect to strength limitations and finds that a limitation to medium work is reasonable given the lack of any clinical findings despite complaints of generalized pain.")(emphasis added)

4

Moreover, the ALJ made these repeated references despite a record replete with documentation of Grimes' complaints of symptoms consistent with migraine headaches. During the hearing, Grimes confirmed that her headaches and moods constituted her most significant health conditions and that she had been experiencing the migraines for approximately 3-4 years. (R. 656, 661-662). She stated that she experiences headaches two to three times a day and that they each last approximately one hour. (R. 668) She takes Topomax for the headaches. (R. 668) Occasionally there are days when she does not experience a headache, but the headaches are stronger and more frequent when she is around loud noises. (R. 668-669) She testified that when she has a headache she has to call her sister to come over to help her with her children. Grimes explained that her sister usually comes over for a couple of hours or the whole day. (R. 670) According to Grimes, her sister takes care of the kids, makes them dinner, bathes them and puts them to bed while Grimes rests and tries to rid herself of the headache. (R. 670) Thus, Grimes' testimony certainly establishes the history of, symptomology, severity and frequency of the migraines as well as the medication she has been prescribed for them.

Further, the record does in fact contain documentation from medical experts confirming Grimes' diagnosis of migraines. That evidence is uncontradicted. Not a single medical provider questioned whether or not Grimes suffered from migraines or whether the migraines were as debilitating as she claimed them to be. Grimes treated with a neurologist, Dr. Rice, who both diagnosed her with migraines and prescribed medication. (R. 304-305, 306, 842, 843, 847, 850, and 852) Significantly, Dr. Rice filled out a "Medical statement regarding headaches for Social Security disability claim" dated

5

May 15, 2015. (R. 988-990) As part of that report, Dr. Rice stated that Grimes suffered from migraine headaches occurring several times a week lasting one to two hours each, and which caused associated symptoms of irritability, photophobia and increased sensitivity to noise. (R. 988-990) Dr. Rice expressed the belief that Grimes <u>would not be able to work</u> while she was suffering from a headache. (R. 990)

The ALJ stated that he "has not given great weight" to Dr. Rice's opinion because of the lapse in time between the last day of treatment and the authoring of the report and because Grimes saw her primary care physician "on many occasions for a wide variety of complaints including urinary tract infections, abdominal pain, asthma exacerbation, menstrual cramps, pregnancy tests, fractured finger, etc … [but] failed, however, to mention any concerns about headache pain…." (R. 648) However, the fact that a claimant "did not always mention, or her physicians did not always take the time to note, migraines during visits to treat other ailments does not necessarily mean her complaints were insincere." *Kulbacki*, 2016 WL 26009984 at * 8. Further, given Grimes' diagnosis of borderline intellectual functioning, it is not surprising that when Grimes went to see her primary care physician for a particular ailment (i.e., urinary tract infection), she would not discuss with him any issues related to migraines. Additionally, the records unquestionably confirm that Dr. Firoiu was well aware of Grimes' history of migraines and that he repeatedly noted the same in the records. (R. 872, 875, 879, 882, 884, 889, 895, 898, 901, 904, 905, 907, 913, 915, 917, 921, 925, 927, 931, 933, 935, 938, 949, 961,971, 973) Further, it is clear that her primary care physician was in contact with Dr. Rice regarding Grimes' neurologic needs and that he found Dr. Rice's conclusions to be reliable and persuasive. In a submission to the Pennsylvania

6

Department of Public Welfare, Dr. Firoiu noted that Grimes was temporarily incapacitated and unable to work until June 30, 2015. (R. 969) As an explanation for such a finding, Dr. Firoiu referenced both psychiatric conditions and the corresponding treating physician and "neurology" and Dr. Rice. (R. 969)

In sum, I have done an exhaustive review of the record and I "cannot find a single statement from any medical professional questioning the existence, severity, or frequency of [Grimes'] migraines." *Kulbacki*, 2016 WL 2609984 at * 7. "In short, most if not all of the factors courts look at are present in this case." *Id., citing, Thomas*, 2015 WL 4067147 at * 5-7 (collecting cases). Given the absence of contrary medical opinions; the presence in the record of many of the factors relating to migraines; a report from her treating neurologist diagnosing Grimes with migraines and opining that they prevent her from working while she is suffering from one; and the ALJ's erroneous reliance upon the lack of clinical, objective evidence as a reason to reject Grimes' claim of disabling migraines, I find that the ALJ's assessment of Grimes' credibility regarding migraines and the failure to account for migraines in the formulation of the RFC was erroneous. The error is particularly troubling here where the vocational expert testified that an individual who had to miss work two to three times per week for one to two hours a day because of headaches would not be able to perform any of the jobs identified in the record. (R. 677)

For the foregoing reasons, Grimes' Motion for Summary Judgment will be granted. The ALJ's decision will be vacated and remanded for further consideration consistent with this Opinion.[2]

---

[2] In light of this decision I need not address Grimes' contention that the ALJ showed bias.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHANIE ROSALIA GRIMES, )
)
      Plaintiff, )
)
-vs- ) Civil Action No. 15-1558
)
NANCY A. BERRYHILL,[3] )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
      Defendant. )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 27th day of February, 2017, it is hereby ORDERED that the decision of the ALJ is vacated. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket no. 13) is granted and Defendant's Motion for Summary Judgment (Docket no. 15) is denied. This action is REMANDED for further consideration consistent with the accompanying Opinion.

                                    BY THE COURT:

                                    /s/ Donetta W. Ambrose
                                    Donetta W. Ambrose
                                    United States Senior District Judge

---

[3] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017.